**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GREGORIO OLIVOS ROMERO,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

       Plaintiff,

v.

B&M #1 US CORP
d/b/a TEXAS ROTISSERIE & GRILL,
BROADWAY CHICKEN & GRILL, INC.
d/b/a TEXAS ROTISSERIE,
RAJ PAUL, and
MEDHAT SHEHATA,

              Defendants.

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**
**Jury Trial Demanded**

---

Plaintiff GREGORIO OLIVOS ROMERO (hereby, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants B&M #1 US CORP d/b/a TEXAS ROTISSERIE & GRILL and BROADWAY CHICKEN & GRILL, INC. d/b/a TEXAS ROTISSERIE (together,

"Corporate Defendants"), and RAJ PAUL and MEDHAT SHEHATA (the "Individual Defendants" and together with the Corporate Defendants, the "Defendants") and states as follows:

## **INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unpaid wages, including overtime, due to time shaving; (3) illegally retained tips; (4) unpaid overtime premiums, due to compensation at a straight time rate; (5) liquidated damages; and (6) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid wages, including overtime, due to an invalid tip credit; (3) unpaid wages, including overtime, due to time shaving; (4) illegally retained tips; (5) unpaid overtime premiums, due to compensation at a straight time rate; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contributions Act ("FICA").

4.      Moreover, by retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

7.      For all relevant periods, Plaintiff was a resident of Bronx County, New York.

8.      Defendant B&M #1 US CORP d/b/a TEXAS ROTISSERIE & GRILL is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 1315 1st Avenue, New York, NY 10021.

9.      Defendant BROADWAY CHICKEN & GRILL, INC. d/b/a TEXAS ROTISSERIE is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 2581 Broadway, New York, NY 10025.

10.      At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

11.      Individual Defendant RAJ PAUL is a principal, owner, and operator of Corporate Defendants. Individual Defendant RAJ PAUL exercises—and also delegates to managers and supervisors—the power to: (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to

Individual Defendant RAJ PAUL regarding any of the terms of their employment, and Individual Defendant RAJ PAUL would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant RAJ PAUL has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant RAJ PAUL had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

12.     Individual Defendant MEDHAT SHEHATA is a principal, owner, and operator of Corporate Defendants. Individual Defendant MEDHAT SHEHATA exercises—and also delegates to managers and supervisors—the power to: (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to Individual Defendant MEDHAT SHEHATA regarding any of the terms of their employment, and Individual Defendant MEDHAT SHEHATA would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant MEDHAT SHEHATA has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant MEDHAT SHEHATA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

13.     At all relevant times, Individual Defendants exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of Corporate Defendants.

14.     At all relevant times, Individual Defendants exercised direct and actual functional control and oversight of the employment terms and conditions of all of Defendants' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

15.     At all relevant times, Individual Defendants ensured the Restaurants (defined below) operated efficiently and profitably by frequently visiting the Restaurants in order to (i) inspect the operations and quality of food, service, and hygiene of the Restaurants, (ii) meet and confer with the Restaurants' management to discuss operations, sales, and overall status of the Restaurants and their employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managers and monitor their individual performances of duties and behaviors to ensure they effectively complete their job duties, and (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

16.     At all relevant times, Individual Defendants held and exercised direct and actual authority, control, and oversight over all managers and supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

17.     Corporate Defendants own and operate two (2) restaurant establishments using variations of common trade names at the following locations:

i.      Texas Rotisserie & Grill, located at 1315 1st Avenue, New York, NY 10021; and

ii.     Texas Rotisserie & Grill, located at 2581 Broadway, New York, NY 10025,

(collectively, the "Restaurants").

18.     While each Restaurant is assigned a separate corporate entity, in reality, the Restaurants are operated as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

(a) Individual Defendant MEDHAT SHEHATA is the registered trademark owner of the "TEXAS ROTISSERIE & GRILL" mark with the United States Patent and Trademark Office (U.S. Serial Number 76375064), listing his address as 94 Fulton Street, New York, NY 10038. *See* **Exhibit A.**

(b) Individual Defendant RAJ PAUL operates the Instagram account @texasrotisseriegrill, which advertises the Broadway location at 2581 Broadway. *See* **Exhibit B.**

(c) On Facebook, the Broadway location (Texas Rotisserie & Grill) advertised the opening of the 1st Avenue location in a January 16, 2014 post, stating: "NEW BRANCH NOW OPEN @ 1315 First Ave. (b/w 70th. & 71st. St.) Check us on TexasRotisserie.com," demonstrating the Restaurants' unified operations. *See* **Exhibit C.**

(d) The Restaurants share the same brand identity and business concept, operating as restaurants offering identical menus, catering services, and product offerings. Both locations use the "Texas Rotisserie & Grill" name and similar branding. The 1st Avenue location's website states: "We specialize in delivering food. In fact, we've delivered over 3 million meals since opening our first restaurant in 1994." The Broadway location's website and Facebook page similarly state they have "delivered over 5 million meals since opening our first restaurant in 1994." Both websites use comparable branding, website templates, and language. *See* **Exhibit D.**

(e) The Restaurants have a centralized Human Resources Department and Administration that deals with hiring, firing, and administering all of the Restaurants' workforce. The Restaurants routinely transfer employees between locations on a temporary and permanent basis.

(f) In a prior lawsuit filed against Defendants in this Court (*Velazquez v. 97 B'way Food Corp.*, No. 1:13-cv-01949-AJN (S.D.N.Y.)), both RAJ PAUL and MEDHAT SHEHATA were named as individual defendants and owners/operators of the Texas Rotisserie & Grill restaurant at 2581 Broadway. *See* **Exhibit E.**

6

19.     At all relevant times, Individual Defendants operated as a centralized employer that dealt with hiring, firing, administering, and managing human relations, including implementing an identical illegal wage and hour policy, for all of the Restaurants' employees.

20.     Accordingly, the Restaurants share sufficient commonalities in ownership, management, branding, operations, and business purpose to constitute a single integrated enterprise within the meaning of the FLSA and NYLL.

21.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to Defendants' business.

22.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to, delivery persons, kitchen workers, counter persons, cashiers, cooks, and porters, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

24.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unpaid wages, including overtime, due to time shaving; (3) illegally retained tips; and (4) unpaid

overtime premiums, due to compensation at a straight time rate. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

25.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, including but not limited to delivery persons, kitchen workers, counter persons, cashiers, cooks, and porters, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members"). The Class also includes a subclass of employees, all of whom were non-exempt tipped employees (including delivery persons, among others) employed by Defendants (the "Tipped Subclass" or "Tipped Subclass Members"). Plaintiff is a member of the Class and the Tipped Subclass.

27.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

8

28.     The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Members of the Class. Further, there is no doubt that there are more than forty (40) members of the Tipped Subclass.

29.     Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (1) unpaid minimum wages; (2) unpaid wages, including overtime, due to time shaving; (3) unpaid overtime premiums, due to compensation at a straight time rate; and (4) failure to comply with the NYLL's wage notice and wage statement requirements. Additionally, the Tipped Subclass Members were subject to the same corporate practices of Defendants of: (1) unpaid wages, including overtime, due to an invalid tip credit; and (2) illegally retained tips.

30.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

31.     Plaintiff is able to fairly and adequately protect the interests of the Class and the Tipped Subclass and has no interests antagonistic to the Class or the Tipped Subclass. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against Corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who

are not named in the Complaint a degree of anonymity, which allows for the vindication of their

rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the Class and Tipped Subclass

which predominate over any questions affecting only individual Class Members, including:

i.    Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

ii.    What are and were Defendants' policies, practices, programs, procedures, protocols, and plans regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class Members;

iii.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

iv.    At what common frequency or frequencies were and are Defendants required to pay Plaintiff and Class Members for their work;

v.    Whether Defendants failed to pay Plaintiff and Class Members the applicable minimum wage for all hours worked;

vi.    Whether Defendants failed to compensate Plaintiff and Class Members for all hours, including overtime, worked due to time shaving;

vii.    Whether Defendants compensated Plaintiff and Class Members their proper overtime rate for all hours worked in excess of forty (40) under the NYLL;

viii.    Whether Defendants were entitled to claim a tip credit from Tipped Subclass wages;

ix.    Whether Defendants retained tips, gratuities, and service fees intended for Plaintiff and Tipped Subclass Members, in violation of NYLL § 196-d;

x.    Whether Defendants provided a wage notice, at the date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

xi.    Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the NYLL.

11

**STATEMENT OF FACTS**

*Plaintiff's Employment Background*

35.    In or around January 2015, Defendants hired Plaintiff to work as a delivery man at Defendants' Texas Rotisserie & Grill, located at 1315 1st Avenue, New York, NY 10021. In addition to making deliveries, Plaintiff's duties included cleaning the restaurant, preparing BBQ sauces, accepting and unloading all incoming deliveries, storing merchandise in the basement, and cleaning bathrooms. Plaintiff's employment continued until approximately September 2025, when Defendants terminated Plaintiff because he complained about missing tips. Following his termination, Defendants still called Plaintiff to work on a per diem basis only when needed. Most recently, Plaintiff worked during the 2026 Super Bowl for one (1) day.

36.    At all relevant times, Defendants paid Plaintiff $6.00 per hour in cash for all hours worked. Plaintiff was paid on a weekly basis. FLSA Collective Plaintiffs and Class Members were compensated by Defendants in cash at similarly sub-minimum wage rates.

37.    During all relevant times, Defendants scheduled Plaintiff to work six (6) days per week, Monday through Saturday, from 10:00 a.m. to 6:00 p.m., with a one-hour unpaid lunch break, for a total of approximately forty-two (42) hours per week.

*Minimum Wage Claim*

38.    At all relevant times, Defendants paid Plaintiff $6.00 per hour in cash for all hours worked. During the relevant statutory period, Plaintiff's wage rate was substantially below the applicable New York City tipped credit minimum wage. *See* **Exhibit F** (Tipped Credit Minimum Wage Rates).

39.    Class Members were compensated by Defendants in cash at similarly sub-minimum wage rates, in violation of the FLSA and the NYLL.

12

40. Defendants knowingly and willfully operated their business with a policy of paying Plaintiff and Class Members below the applicable minimum wage rates in violation of the FLSA and the NYLL.

*Invalid Tip Credit Claim*

41. Throughout their employment, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were subjected to Defendants' invalid tip credit policy in violation of the FLSA and NYLL.

42. At all relevant times, Defendants deducted a tip credit from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages.

43. But Defendants were not actually entitled to claim any tip credit under the FLSA or the NYLL because Defendants: (i) caused Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members to engage in non-tipped duties for more than 20% of the work they performed each shift; (ii) unlawfully retained tips; and (iii) failed to provide tip credit notice.

44. At all relevant times, in addition to making deliveries, Defendants required Plaintiff to clean the restaurant, prepare BBQ sauces, accept and unload incoming deliveries, store merchandise in the basement, and clean bathrooms. Such non-tipped work took over 20% of Plaintiff's shift. Much of the work was performed at the beginning and end of his shifts when the restaurant was closed to patrons. Such excessive non-tipped side work invalidates Defendants' tip credit.

45. At all relevant times, Defendants required FLSA Collective Plaintiffs and Tipped Subclass Members to perform similar non-tipped duties for comparable amounts of time, which invalidated Defendants' tip credit deductions from these employees' wages.

46. As a direct result of Defendants' mandated side work, Defendants consistently paid

Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members below the required minimum wage in violation of the FLSA and NYLL.

47.    Further, Defendants never provided Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members with notice that Defendants were claiming a tip credit against their wages.

48.    Moreover, Defendants' illegal retention of gratuities, as discussed below, forms an independent basis to invalidate their claimed tip credit.

49.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages in violation of the FLSA and the NYLL.

*Tip Retention Claim*

50.    At all times during Plaintiff's employment, Plaintiff's job duties required him to deliver food orders placed through third-party delivery platforms, including Seamless. Customers routinely tipped Plaintiff through these platforms.

51.    Despite customers' tips being intended for Plaintiff, Defendants retained a substantial portion of the gratuities left by customers for Plaintiff. Specifically, Defendants only provided Plaintiff with approximately $40 to $60 of tips per day, regardless of how many orders Plaintiff delivered or the value of those orders. Once, Plaintiff found a Seamless receipt for an order he had delivered where the customer had tipped $50.00 for just that one order but Plaintiff did not receive a substantial portion of the $50.00 tip.

52.    Customers also frequently asked Plaintiff "was the tip okay?" when Plaintiff delivered their orders. In fact, customers have informed Plaintiff of large tips that Plaintiff never received. When Plaintiff confronted management about this practice, Defendants brushed him off

14

and began ripping out the last three (3) inches of the Seamless receipts—the portion showing the tip allocation and total order amount—before giving the receipts to Plaintiff.

53.    Similarly, FLSA Collective Plaintiffs and Tipped Subclass Members had their tips, gratuities, and service fees, which were intended for them, retained by Defendants.

54.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaining tips from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages in violation of the FLSA and the NYLL.

*Unpaid Overtime Premiums Claim*

55.    At all relevant times, Defendants failed to compensate Plaintiff with the proper overtime premiums for all hours worked in excess of forty (40) per workweek, in violation of the FLSA and the NYLL.

56.    Because Plaintiff was regularly scheduled to work at least forty-two (42) hours per week, no fewer than two (2) of his regularly scheduled hours were subject to compensation at the overtime premium rate.

57.    However, Defendants paid Plaintiff $6.00 per hour straight-time for all hours worked, failing to compensate overtime hours at the required rate of one-and-one-half times Plaintiff's regular rate. FLSA Collective Plaintiffs and Class Members were similarly deprived of proper overtime pay, as Defendants paid them at a straight-time rate for all hours worked over forty (40) in a workweek.

58.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for all earned overtime wages in accordance with the FLSA and the NYLL.

*Time Shaving Claim*

59.     At all relevant times, Defendants failed to compensate Plaintiff with proper wages, including overtime wages, for all hours he worked due to a policy of time shaving, in violation of the FLSA and the NYLL.

60.     At all relevant times, Defendants only compensated Plaintiff for his scheduled shift and did not require Plaintiff to clock in or out or otherwise track his actual hours. Throughout Plaintiff's employment, Plaintiff was regularly required to stay at work for approximately one (1) hour after the end of his scheduled shift, three (3) times per week. However, Defendants only paid Plaintiff for his scheduled shift, resulting in Defendants shorting Plaintiff approximately three (3) hours per week. Consequently, Defendants did not compensate Plaintiff for all hours worked. Defendants' time shaving was facilitated by their willful failure to require Plaintiff to clock in or out or otherwise track Plaintiff's hours. Because Plaintiff already worked over forty (40) hours per week, these unpaid hours were always unpaid overtime hours.

61.     FLSA Collective Plaintiffs' and Class Members' hours were similarly untracked, and their recorded time was similarly shaved.

62.     Defendants knowingly and willfully operated their business with a policy of time shaving Plaintiff's, FLSA Collective Plaintiffs', and Class Members' hours to avoid paying earned overtime wages in accordance with the FLSA and the NYLL.

*Breach of Contract and Unjust Enrichment Claims*

63.     When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

64.     When Defendants failed to provide proper W-2 forms to Plaintiff and Class Members, Defendants breached the covenant of good faith by denying Plaintiff and Class Members the contract's expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

65.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies, namely the employer's share of Social Security and Medicare taxes, that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

66.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

67.     An employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

68.     Defendants are also liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*WTPA Claims*

69.     At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

70.     At all relevant times, Defendants paid Plaintiff and Class Members in cash and failed to provide any paystubs to them with every weekly payment.

71.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

72.    New York courts continue to find sufficient standing to support these claims.  One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

73.    Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

18

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

74.    By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

75.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employment with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

19

76.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

77.     Plaintiff retained Lee Litigation Group, PLLC to represent him, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services if they prevail.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

78.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

79.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

80.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

81.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

82.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and FLSA Collective Plaintiffs all wages, including overtime, earned due to an invalid tip credit policy, in violation of the FLSA.

20

83.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages for all hours worked due to time shaving, in violation of the FLSA.

84.     At all relevant times, Defendants had a policy and practice of retaining tips intended for Plaintiff and FLSA Collective Plaintiffs, in violation of the FLSA.

85.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime wages at the proper statutory rate of time-and-one-half for all hours worked in excess of forty (40) hours in a workweek, due to a policy of straight pay, in violation of the FLSA.

86.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

87.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

88.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

89.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid

minimum wages; unpaid wages, including overtime, due to time shaving; illegally retained tips; and unpaid overtime premiums due to compensating employees at a straight time rate for overtime hours; plus an equal amount as liquidated damages.

90. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

91. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

92. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

93. Defendants knowingly and willfully failed to pay Plaintiff and Class Members the applicable minimum wage for all hours worked, in violation of the NYLL.

94. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and Tipped Subclass Members all wages, including overtime, earned due to an invalid tip credit policy, in violation of the NYLL.

95. Defendants knowingly and willfully retained all or a substantial portion of tips, gratuities, and service fees intended for Plaintiff and Tipped Subclass Members, in violation of NYLL § 196-d.

96. Defendants knowingly and willfully failed to pay Plaintiff and Class Members all wages owed, including overtime, due to a policy of time shaving, in violation of the NYLL.

97. Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular

22

rate of pay for each hour worked in excess of forty (40) hours in a workweek due to an straight time rate, in violation of the NYLL.

98.    Defendants knowingly and willfully failed to properly notify employees of their overtime pay rate, in direct violation of the NYLL.

99.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL.

100.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

101.    Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages; unpaid wages, including overtime, due to time shaving; illegally retained tips; unpaid premiums due to compensating employees at a straight time rate for overtime hours; reasonable attorneys' fees; liquidated damages; and statutory penalties and costs and disbursements of the action, pursuant to the NYLL

## COUNT III

## BREACH OF CONTRACT

102.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

103.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance ... This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits

23

of the contract ... [T]he duties of good faith and fair dealing ... encompass any promises which a reasonable person in the position of the promise would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

104. Defendants breached this duty, and consequently the parties' contract, when they paid Plaintiff and Class Members in cash without withholdings or deductions, and further failed to provide proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, including Social Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

**COUNT IV**

**UNJUST ENRICHMENT**

105. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

106. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

107. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

108.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

    a)  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

    b)  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c)  An award of unpaid minimum wages due under the NYLL;

    d)  An award of unpaid wages, including overtime, due to an invalid tip credit, due under the FLSA and NYLL

    e)  An award of unpaid wages, including overtime, due to a policy of time shaving, due under the FLSA and the NYLL;

    f)  An award of unpaid overtime wages, due to a straight time policy, due under the FLSA and the NYLL;

    g)  An award of disgorgement of all tips illegally retained by Defendants;

    h)  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

    i)  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

    j)  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

    k)  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

    l)  Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

m) An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

n) Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o) Designation of this action as a class action pursuant to F.R.C.P. 23;

p) Designation of Plaintiff as Representative of Class;

q) Designation of Plaintiff as Representative of the Tipped Subclass; and

r) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 30, 2026            Respectfully submitted,
New York, New York

By: */s/ C.K. Lee*
C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*